**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **DARRYL BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:22-cv-00117-CDL** |
| | ) | |
| **CENTRAL OF GEORGIA RAILROAD** | ) | |
| **COMPANY; NORFOLK SOUTHERN** | ) | |
| **RAILWAY COMPANY; NORFOLK** | ) | |
| **SOUTHERN CORPORATION.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***

COMES NOW Plaintiff Darryl Brown, by and through undersigned counsel, and respectfully submits his Court his response in opposition to the Motions *in Limine* filed by Defendants Central of Georgia Railroad Company, Norfolk Southern Railway Company, and Norfolk Southern Corporation (collectively referred to herein as "Defendants" or "Norfolk Southern"):

**Defendants' Motion in Limine No. 1**

Plaintiff does not oppose Defendants' Motion in Limine No. 1. Plaintiff's counsel does not intend to comment on the legislative history of anti-retaliation amendments to the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109, or the retaliatory culture in the railroad industry that prompted Congress to enact the amendments. That said, Congress's purpose in enacting the FRSA's anti-retaliation amendments was to prohibit railroads from taking adverse actions against railroad employees based, in whole or in part, on their participation in activities that promote railroad safety. This safety-driven purpose of the FRSA will be obvious at trial because Plaintiff

1

alleges that one of his protected activities was his refusal to violated a federal railroad safety law. Plaintiff's counsel should not barred from mentioning that the FRSA's anti-retaliation provisions were enacted to promote railroad safety.

### Defendants' Motion in Limine No. 2

Plaintiff opposes Defendants' Motion in Limine No. 2, which seeks to prohibit "any attempt to second-guess the discipline decisions of Norfolk Southern including but not limited to asking the jury to determine if the decisions to remove Brown from service, charge them with rules violations, hold an investigation hearing, and ultimately remove them from service were 'wise,' 'fair,' 'reasonable,' etc." Norfolk Southern claims any such evidence "second-guessing" its disciplinary decisions in this case are inrelevant and, thus, inadmissible.

This motion should be denied because it is the type of "[g]eneralized, vague, and overly broad" motion in limine that this Court ordered the parties not to file in the Order Setting Pretrial Conference. (Doc. 35, at p. 4.) As the Middle District of Georgia recently stated:

> Motions in limine that are broad, vague, and include speculative categories of evidence and argument of which the Court cannot predetermine the admissibility are due to be denied, as the real purpose of a motion in limine is to avoid the introduction of evidence at trial that is clearly inadmissible on all potential grounds' and could irretrievably impact the fairness of the trial.

*Underwood v. Scarbrough*, No. 7:21-cv-00040 (WLS), 2023 U.S. Dist. LEXIS 38107, at *12 (M.D. Ga. Mar. 7, 2023) (internal citations and quotations omitted).

This motion should also be denied because it is seemingly an attempt to bar Plaintiff from introducing at trial the evidence and testimony that defeated Defendants' Motion for Summary Judgment. For example, evidence tending to show an employer's stated reason for an adverse action is unworthy of credence is always relevant in employment discrimination cases. *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 147 (2000) ("Proof that the defendant's

explanation [of their decision] is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination . . . ."). This permits Plaintiff to present evidence demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Norfolk Southern's stated non-discriminatory reasons for terminating him. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). Evidence of this nature inherently calls into question the wisdom and reasonableness of the employer's decision but that does not render the evidence irrelevant or inadmissible. Indeed, the Court cited a great deal of this evidence in denying Defendants' Motion for Summary Judgment.

Finally, Norfolk Southern predicates the motion on a flawed legal premise. The "honest belief" doctrine is not a defense to liability under the FRSA's "contributing factor" causation standard. The "honest belief" rule is a defense applicable to claims analyzed under the *McDonnell-Douglas* burden-shifting framework, where the employee carries the ultimate burden of demonstrating pretext. *See Dawson v. Henry Cnty. Police Dep't*, 238 F. App'x 545, 549 (11th Cir. 2007) ("pretext inquiry focuses of the honesty of the employer's explanation"); *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020) ("The 'honest belief' rule is really just an aspect of the plaintiff's burden at step three [of the *McDonnell Douglas* burden-shifting framework]."). It is well-settled, however, that the FRSA's relaxed "contributing factor" standard does not require establishing pretext. The Eleventh Circuit has made this clear in the context of mixed-motive claims, holding that a demonstration of pretext is not a prerequisite to liability under the more demanding "motivating factor" causation standard. *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016) (explaining why the *McDonnell Douglas* framework and a demonstration of pretext are "fatally inconsistent" with mixed motive claims); *id*. at 1240 (Mixed-motive claims do not "suffer from *McDonnell Douglas*'s pitfall of demanding that employees

prove pretext."); *Fonte v. Lee Mem'l Health Sys.*, No. 20-13240, 2021 U.S. App. LEXIS 34256, at *13 (11th Cir. Nov. 18, 2021)  ("Pretext is not relevant to a mixed-motive claim.").

Because pretext is not required to satisfy the FRSA's contributing factor standard, the "honest belief" doctrine is not a defense to liability. *See*, *e.g.*, *Blackorby v. BNSF Ry. Co.*, 936 F.3d 733, 737 (8th Cir. 2019) (reversing defense verdict in FRSA retaliation case because the trial court when it instructed the jury that "BNSF Railway cannot be held liable under the FRSA if you conclude that BNSF Railway disciplined Plaintiff based on its honestly held belief that Plaintiff engaged in misconduct or committed a rules violation"); *see Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1197 (9th Cir. 2019) (holding that the district court's "honest belief" instruction may have "encouraged the jury to skirt the actual issue and improperly focus on whether discipline was justified for Frost's safety violation instead of whether his protected conduct 'tend[ed] to affect in any way' the decision to terminate him."); *see also Morgan v. Norfolk S. Ry. Co.*, No. 2:13-cv-0257-WMA, 2014 U.S. Dist. LEXIS 109610, at *13 (N.D. Ala. Aug. 8, 2014) (stating that Eleventh Circuit's "business judgment" rule is not a defense to causation under the "contributing factor" standard).

The Eleventh Circuit's decision in *Stone & Webster Construction., Inc. v. U.S. Department of Labor*, 684 F.3d 1127, 1130 (11th Cir. 2012), does not hold otherwise.  In *Stone & Webster*, the Eleventh Circuit reviewed a decision of the Administrative Review Board ("ARB"), which reversed an Administrative Law Judge's ("ALJ") dismissal of a retaliation claim under the whistleblower provisions of the Energy Reorganization Act ("ERA").  *Id*. at 1131-32.  The ALJ dismissed the claim because it found that the complainant did not establish the "contributing factor" element of his prima facie case.  The ARB reversed the ALJ's decision on grounds that there was substantial evidence of pretext.  *Id.*  In its pretext analysis, the ARB chose to apply

Eleventh Circuit Title VII case law—not ERA case law.  *Id*. at 1134-35.  The Eleventh Circuit

held that the ARB erred in reversing the ALJ's dismissal, first by applying an incorrect standard

of review and also by misapplying this Court's Title VII case law on pretext.  *Id*. at 1131-35.  The

Eleventh Circuit explained that the ARB was under no obligation to apply Eleventh Circuit Title

VII case to its pretext analysis of the complainant's ERA retaliation claim but that the ARB had

voluntarily chosen to do so.  *Id*. at 1135.  The Eleventh Circuit then said, "[i]f the Secretary cites

our precedent, we are obligated to review, and if necessary, correct, her application of our

precedent."  *Id*. at 1135.  And that is what the Eleventh Circuit did.  It did not, as Norfolk Southern

contends, hold that the "honest belief" doctrine precludes a finding of causation under the

contributing factor standard.

**Defendants' Motion in Limine No. 3**

Plaintiff opposes Defendants' Motion in Limine No. 3.  This motion seeks to prohibit

Plaintiff's direct supervisor, Assistant Trainmaster Lamont Beard, from testifying "that he had

been told by Norfolk Southern to tell engineers not to start their locomotives more than 20 minutes

before departure, and that he told engineers this."  (Doc. 44 at p. 4-5.)  Norfolk Southern makes

the perplexing argument that Beard's testimony is irrelevant because, when Plaintiff was asked at

his disciplinary hearing why he did not inspect the locomotives sooner, Plaintiff did not state "that

his understanding of [Norfolk Southern's] fuel conservation rule was based on an instruction from

Lamont Beard or any other supervisor."  (Id. at p. 5; see doc. 27 at p. 10.)

Norfolk Southern's argument is clearly misplaced.  One of Norfolk Southern's proffered

justifications for Plaintiff's termination is that he violated Norfolk Southern's omnibus rule

requiring that employees work efficiently by waiting to inspect his locomotives until the crew was

almost ready to depart.  Beard's testimony tends to show that Plaintiff's proffered justification for

disciplining Plaintiff is false and that Norfolk Southern manipulated a vague work rule to punish an employee whose protected activity caused service problems.  To be sure, this Court *quoted* Beard's testimony here in its Order denying Defendants' Motion for Summary. (Doc. 30 at p. 14). What Plaintiff did or did not say in response to an isolated question at his disciplinary hearing does not negate the relevance of Beard's testimony.  See Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence.").

**Defendants' Motion in Limine No. 4**

Defendants' Motion in Limine No. 4 is due to be denied for the same reasons.  Here, Defendants move to prohibit Plaintiff from testifying "that Jason Ault or any other supervisor was aware of his claimed past practice of waiting to start his locomotive inspection until the conductor was nearly ready to depart" on relevance grounds because Plaintiff did not offer this testimony at his disciplinary hearing. As this Court recognized in denying Defendants' Motion for Summary Judgment, Plaintiff's testimony that Jason Ault knew about and took no exception to Plaintiff's practice of waiting to inspect and crank before November 7, 2019, is unquestionably relevant. (Doc. 30, at p. 14.)  The fact that Ault first took exception to it hours after a customer complained that Plaintiff's compliance with the Hours of Service Act was causing delivery failures is probative evidence that Plaintiff's protected activity was a "contributing factor" to the adverse actions taken against him.  *Singleton v. Norfolk S. Ry. Co.*, No. 1:19-CV-3133-TWT, 2023 U.S. Dist. LEXIS 18071, at *18-19 (N.D. Ga. Feb. 3, 2023) (noting that a railroad's inconsistent application of its policies is relevant circumstantial evidence of "contributing factor" causation).

**Defendants' Motion in Limine No. 5**

Plaintiff opposes Defendants' Motion in Limine No. 5.  The motion seeks to prohibit Plaintiff's counsel from questioning witnesses on "the outcomes of previous investigation hearings in which Carter Roberts had served as Hearing Officer" pursuant to Fed. R. Evid. 402 and 403. Put another way, Norfolk Southern does not want the jury to hear that Carter Roberts almost always finds the charged employee guilty.  This evidence is probative to whether Roberts actually believed Plaintiff was guilty of the disciplinary charges, especially when considered in conjunction with the facts that the unrebutted testimony at Plaintiff's disciplinary hearing was that he never received Trainmaster Lockhart's instruction from Lockhart himself or anyone else.

**Defendants' Motion in Limine No. 6**

Plaintiff opposes Defendants' Motion in Limine No. 6, which seeks to preclude "[a]ny reference to other FRSA cases, complaints, OSHA or Department of Labor decisions or verdicts" pursuant to Fed. R. Evid. 402, 403, and 404(b)(1).  Defendants specifically seek to stop Plaintiff's counsel from questioning Carter Roberts and other supervisors "whether, in light of a 2021 jury verdict against Norfolk Southern in the case of *Keevin Lowe v. Norfolk Southern Ry. Co.* (from the Southern District of Alabama), any discipline had been taken against any supervisor as a result."

Defendants' Motion is due to be denied because the jury verdict in *Lowe* and Norfolk Southern's response to that jury verdict are relevant to punitive damages.  Punitive damages are available under the FRSA for violations that are intentional or done with a reckless or callous disregard for an employee's FRSA rights.  *James v. CSX Transp. Inc.*, No. 4:15-cv-204 (CDL), 2017 U.S. Dist. LEXIS 143640, at *10-11 (M.D. Ga. Feb. 21, 2017).  Under Title VII, an employer can stave off punitive damages for its managers' intentional or reckless Title VII violations if it proves that it made "good faith efforts" to comply with the law:

> An employer may not be held liable for punitive damages because of discriminatory
> acts on the part of its managerial employees where the managerial employees' acts

7

are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace. **However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective**.

Eleventh Circuit Pattern Jury Instructions § 4.5 (2022) (Title VII – Civil Rights Act – Discrimination – Discharge or Failure to Promote – Including "Same Decision" Defense) (emphasis added). Norfolk Southern asserts that the defense applies in FRSA retaliation cases, and that its "good faith efforts" to comply with the FRSA shields it from an award of punitive damages in this case, even if its managers disciplined Plaintiff in reckless or callous disregard of his FRSA rights. (Doc. 6, at p. 19.)

As noted above, however, the "good faith efforts" defense requires more than proof that the employer implemented anti-retaliation policies. It requires that those policies be effective. To be effective, they must be enforced. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1270 (11th Cir. 2008) (upholding punitive award against employer in Title VII case because, *inter alia*, the plaintiff presented evidence that the employer's failure to enforce its anti-discrimination policy rendered it ineffective); *McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1138 (10th Cir. 2006); *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 385 (2d Cir. 2001). Otherwise, "a company could insulate itself from liability by adopting a policy that it has no intention to enforce, thwarting the preventative purpose of the statute." *Neal v. Manpower Int'l, Inc.*, No. 3:00-cv-277/LAC, 2001 U.S. Dist. LEXIS 25805, at *52 (N.D. Fla. Sep. 17, 2001).

The jury verdict in *Lowe* and Norfolk Southern's response (or lack of response) to the verdict is relevant to whether Norfolk Southern's anti-retaliation policies are enforced. In *Lowe*, Norfolk Southern charged an Alabama Division conductor from Selma with "late reporting" and false and conflicting statements immediately after he reported an on-duty injury. Carter Roberts

served as the hearing officer at the plaintiff's disciplinary hearing and made the termination decision.  A jury trial was held in November 2021, and Carter Roberts sat through (and testified at) the trial as Norfolk Southern's company representative.  The jury returned a verdict in favor of the plaintiff and awarded punitive damages in excess of the statutory maximum, finding that Norfolk Southern managers terminated the plaintiff in *Lowe* in reckless or callous disregard of his rights under the FRSA.

How Norfolk Southern responded to this recent unanimous jury verdict that its Alabama Division managers had recklessly and callously disregarded an employee's FRSA rights is relevant to the effectiveness of its anti-retaliation policies and its purported "good faith efforts" to comply with the law.

**Defendants' Motion in Limine No. 7**

Plaintiff opposes Defendants' Motion in Limine No. 7, which seeks to preclude "[a]ny question of any Norfolk Southern supervisor as to whether he has ever heard of any Norfolk Southern supervisor being punished for illegal retaliation."  Plaintiff submits that this motion should be denied for the same reason as Norfolk Southern's Motion in Limine No. 6.

**Defendants' Motion in Limine No. 8**

Plaintiff opposes Defendants' Motion in Limine No. 8.  Alabama Division Superintendent Eric Peters, the Norfolk Southern manager who decided to remove Plaintiff from service and to terminate Plaintiff after Carter Roberts found him guilty of the charge, issued the referenced bulletin one day after Plaintiff's disciplinary hearing.  The bulletin is relevant to show that Peters knew that Norfolk Southern had no rules at the time of the charge requiring engineers to report non-operational delays to supervisors.

**Defendants' Motion in Limine No. 9**

Plaintiff opposes Defendants' Motion in Limine No. 9, which seeks to prohibit "[a]ny discussion or opinions on the 'pros and cons' of the concept of 'Precision Scheduling Railroading,' (PSR), both in general and as implemented by Norfolk Southern" pursuant to Fed. R. Evid. 402 and 403. This motion should be denied because the evidence shows that Norfolk Southern's implementation of the PSR business model was the primary cause of the congestion that delayed the A45 and prevented the crew from servicing EARY within the hours of service. Eric Peters testified that PSR-related changes was also the reason for Norfolk Southern changing the A45's train plan to go to Norris Yard shortly before Plaintiff became its engineer. The congestion that the A45 encountered at Norris Yard and elsewhere will be a major talking point at trial, and Plaintiff should be entitled to inform the jury about the cause of the congestion.

**Defendants' Motion in Limine No. 10**

Plaintiff opposes Defendants' Motion in Limine No. 10, which seeks to exclude "[a]ny reference to compromise offers and negotiations between Norfolk Southern and Plaintiff and/or his union representatives in 2020 concerning Plaintiff's possible return to work" pursuant to Fed. R. Evid. 408. Rule 408 provides that evidence of "furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim" is not admissible "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. The Rule also states that "conduct or a statement made during compromise negotiations about the claim," is inadmissible. *Id*. In employment discrimination lawsuits, offers of reinstatement that are not conditioned on the plaintiff modifying or abandoning his or her claim are not "compromise offers" within the purview of Rule 408 and, thus, are not barred by the rule. *Knox v. Cessna Aircraft Co.*, Civil Action No. 4:05-CV-131(HL), 2007 U.S.

Dist. LEXIS 71528, at *27 (M.D. Ga. Sep. 26, 2007).  At the time Plaintiff was reinstated, his retaliation claim was pending before the Occupational Safety and Health Administration ("OSHA").  There has been no evidence presented that Norfolk Southern ever made an offer to Plaintiff conditioning his reinstatement on releasing or otherwise modifying his claim.  Consequently, Norfolk Southern's offers of reinstatement and any related negotiations are not "compromise offers or negotiations" barred by Rule 408.

**Defendants' Motion in Limine No. 11**

Plaintiff does not oppose Defendants' Motion in Limine No. 11

**Defendants' Motion in Limine No. 12**

Plaintiff does not oppose Defendants' Motion in Limine No. 12.

Respectfully submitted,

**BURGE & BURGE, P.C.**

s/ F. TUCKER BURGE, JR.
F. Tucker Burge, Sr. (095140)
F. Tucker Burge, Jr (admitted pro hac vice)
2001 Park Place, Suite 1350
Birmingham, AL 35203
Telephone: 205-251-9000
Facsimile:  205-323-0512
Email:  tucker@burge-law.com
          ftbjr@burge-law.com


s/ J. ANDERSON  HARP
Georgia Bar No. 327767
Post Office Box 2645
812 Broadway
Columbus, GA   31902
(706) 322-8004 (OFFICE)
(706) 322-8082 (FAX)
Email: jah@jaharp.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

11

I hereby certify that on this 12th day of October, 2022, I filed the foregoing with the Clerk of Court using the CM/ECF System which will send electronic notification of such filing to the following:

John M. Graham (John.Graham@phelps.com)
Kenneth Boyles (kenneth.boyles@phelps.com)
PHELPS DUNBAR LLC
2001 Park Place, Suite 700
Birmingham, AL 35203

/s/ F. TUCKER BURGE, JR.
F. TUCKER BURGE, JR.